UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AMECA ADAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 4:16-CV-2155-SPM |
| | ) |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Deputy Commissioner of Operations, | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final

decision of Defendant Nancy A. Berryhill, the Deputy Commissioner of Operations, Social

Security Administration (the "Commissioner"), denying the application of Plaintiff Ameca Adams

("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42

U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social

Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of

the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 15). Because

I find the decision denying benefits was supported by substantial evidence, I will affirm the

Commissioner's denial of Plaintiff's application.

### I.    FACTUAL BACKGROUND

Plaintiff was born June 26, 1976. (Tr. 40). She lives with her husband and five children.

(Tr. 40). She has completed the eleventh grade and has had no additional vocational training. (Tr.

41). Her last job was performing in-home day care, which she did from 2006 to 2008; she stopped

because she was "very weak," she needed people to help her, and she could not find people to help her. (Tr. 42, 44-45).

Plaintiff testified that she cannot do her prior work because of her lack of strength and because of her heart rate. (Tr. 43). She has attacks wherein her heart rate increases and she gets dizzy, lightheaded, and a little confused. (Tr. 43). She never knows when they will come on. (Tr. 46). They occur about three to four times a week. (Tr. 46). If she is not having an attack, she is okay. (Tr. 46). Plaintiff has problems being on her feet and sometimes has to lean against something if she stands too long, though she does not use any assistive devices. (Tr. 45). She can walk for about three minutes before having to stop to sit. (Tr. 45). She cannot make it up or down a flight of stairs, because she gets lightheaded and dizzy. (Tr. 45). Plaintiff is bothered when it is really hot or really cold. (Tr. 49).

Plaintiff goes to the grocery store about three times a month and uses the electric sit-down cart. (Tr. 47). She does not do any yard work, and her children do most of the sweeping, vacuuming, and dishwashing. (Tr. 47). Her husband and children do the laundry because it is downstairs, and the steps are too difficult for her. (Tr. 48). She drives two or three times a week and sometimes pulls over when her heart rate goes up and she gets dizzy. (Tr. 40-41).

Plaintiff takes atenolol, aspirin, and nitroglycerine for her heart problems. (Tr. 48). She also has a pacemaker. (Tr. 48). When she had her pacemaker installed, she was told to avoid stress and to back down on her walking activities. (Tr. 49). She was also given a handicap sticker so she would not have to walk as much. (Tr. 49).

With regard to Plaintiff's medical records, the Court accepts the facts as presented in the parties' briefs and statements of facts. The Court will address specific facts as needed in the discussion below.

## II.    PROCEDURAL BACKGROUND

On May 29, 2013, Plaintiff applied for DIB and SSI, alleging that she had been unable to work since June 11, 2012. (Tr. 127-38). Her application was initially denied. (Tr. 54-55). On September 16, 2013, Plaintiff filed a request for hearing by an ALJ. (Tr. 62-66). On September 22, 2015, after a hearing, the ALJ issued an unfavorable decision. (Tr. 30-34). On November 30, 2015, Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council. (Tr. 20). On January 19, 2016, the Appeals Council denied Plaintiff's request for review. (Tr. 7-10). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## III.    STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e), 416.920(e), 416.945(a)(1). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis

proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

## IV. THE ALJ'S DECISION

The ALJ began by noting that Plaintiff's allegation of disability since June 11, 2012 constituted an implicit request to reopen an adverse Title II determination dated July 19, 2012. The ALJ denied that request, finding that the record did not show a good reason to reopen it. (Tr. 25). Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since July 20, 2012; that Plaintiff had the severe impairments of tachycardia and cardiomyopathy; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 27-28). The ALJ found that Plaintiff had the RFC to perform sedentary work as defined in the regulations, with several additional physical and mental restrictions (discussed below). (Tr. 28). Relying on the testimony of a vocational expert, the ALJ found that Plaintiff was unable to perform her past relevant work as a babysitter. (Tr. 30). However, he also found that a significant number of jobs existed in the national economy that she could

perform, including addresser (*Dictionary of Occupational Titles* No. 209.587-010, document preparer (*Dictionary of Occupational Titles* No. 249.587-018), and press-clippings cutter and paster (*Dictionary of Occupational Titles* No. 249.587-014). (Tr. 30). The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 30).

V.     **DISCUSSION**

Plaintiff challenges the ALJ's decision on three grounds: (1) that the RFC is not supported by substantial evidence; (2) that the ALJ improperly discounted Plaintiff's testimony; and (3) that remand is required so that the ALJ can consider new evidence from registered nurse David Palmer that was submitted to the Appeals Council.

### A.  Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the

evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

## B. The RFC Assessment

Plaintiff's first argument is that the ALJ's RFC assessment is not supported by substantial evidence. A claimant's RFC is "the most a claimant can do despite [the claimant's] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

The ALJ made the following RFC finding:

> Since July 20, 2012, [Plaintiff] has had the residual functional capacity to perform sedentary work as that term is defined by regulations, except that she has been able to sit eight hours in an eight-hour day and stand and/or walk a total of one hour in an eight-hour day, and she has been unable to: crawl or climb ladders, ropes or scaffolds; have concentrated exposure to extreme cold, heat, or humidity; have concentrated exposure to pulmonary irritants such as fumes, odors, dust and gases; operate moving machinery; or have exposure to unprotected heights or hazardous machinery. She has also been able to perform simple, routine, repetitive tasks, but the tasks must be performed in a low-stress environment ("low stress" being defined as requiring no more than occasional decision-making and involving no more than occasional changes in the work setting).

(Tr. 28).

After review of the record, the Court finds substantial evidence to support this RFC. First, the RFC is supported by the opinion of non-examining medical expert Dr. Harvey L. Alpern, which the ALJ gave "considerable evidentiary weight" based on Dr. Alpern's credentials and the consistency of his opinions with the medical evidence. (Tr. 29). On August 25, 2015, Dr. Alpern

completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) (Tr. 778-83) and a Medical Interrogatory Physical Impairment form (Tr. 785-87). Dr. Alpern opined that Plaintiff could lift and carry up to 20 pounds frequently (Tr. 778); could sit, stand, or walk for two hours at one time and for six hours total in an eight-hour work day (Tr. 779); could only occasionally reach because of her pacemaker (Tr. 780); could only occasionally climb stairs, ramps, ladders, or scaffolds, balance, stoop, kneel, crouch, and crawl due to her lower back pain (Tr. 781); could never be around unprotected heights or moving mechanical parts because of her pacemaker (Tr. 782); and could perform activities such as shopping, traveling without a companion, ambulating without using a wheelchair or walker, walking a block at a reasonable pace on uneven surfaces, climbing a few steps at a reasonable pace with the use of a single hand rail, and sorting, handling, or using paper and files. (Tr. 783). Dr. Alpern noted that Plaintiff had a pacemaker and had recurrent hospital visits for chest pain and palpitations, but that no cardiac cause was found for the pain and that Plaintiff was treated for gastritis. (Tr. 785). He also noted that Plaintiff had no evidence of cardiomyopathy (even though it was listed as a diagnosis), and no coronary artery disease had been found. (Tr. 785). He also discussed the medical evidence related to cardiomegaly and noted that cardiomegaly was only found on portable X-rays, which are not valid, and that when standard techniques were used, the results were normal or borderline. (Tr. 786). Dr. Alpern's opinions regarding Plaintiff's fully support the ALJ's finding that Plaintiff could perform sedentary work with several additional limitations.

As the ALJ also found, the RFC finding is supported by Plaintiff's medical records, which generally reflect objective findings that were typically normal or mild. (Tr. 29). Her treating physicians' cardiovascular examination findings have consistently been normal, with normal rate, regular rhythm, normal heart sounds, intact distal pulses, no gallop, no friction rub, and no murmur

heard. (Tr. 224, 234, 238, 241-42, 258, 263, 270, 278, 295, 319, 341, 402, 432, 433, 437, 462, 469, 476, 486, 492, 552, 560, 578, 600, 618, 633-34, 653, 684, 714, 720, 723, 746). After a "general cardiology evaluation" in November 2014, Dr. Serota described her cardiac workup as "negative." (Tr. 491-92). In June 2015, it was noted that although she had chest pain, she had an "unremarkable" cardiac workup. (Tr. 714). Chest X-rays showed cardiomegaly (often described as "mild" or "borderline"), but not active disease. (Tr. 245-46, 300-01, 346-47, 425, 453, 552, 564, 583, 603, 636-37, 657-58, 699-700). Echocardiograms showed generally normal findings aside from mild mitral valve regurgitation and an abnormal left ventricular ejection fraction on one date. (Tr. 222, 285-86, 459, 481-82). Findings from a full pacemaker interrogation examination in October 2012 were normal. (Tr. 226, 235). Plaintiff's doctors also often suggested that her symptoms did not have a cardiac cause, for example noting that her shortness of breath was "not related to her cardiac arrhythmia problem" (Tr. 226, 235); that her chest pain was "of unclear etiology" (Tr. 304); that her chest pain "appears to be noncardiac" (Tr. 434); that her palpitations "appear to be consistent with anxiety" (Tr. 684); that her upper abdominal pain "could represent gastric or duodenal ulcer" (Tr. 720); or that her chest pain "may be secondary to an upper respiratory infection" (Tr. 724).

Additionally, although Plaintiff's treatment records show that Plaintiff occasionally experienced chest pains, heart palpitations, arrhythmia, shortness of breath, they do not indicate that she experienced ongoing symptoms so severe that they would preclude sedentary work. For example, although Plaintiff reported symptoms of arrhythmia, she described the symptoms as lasting less than five minutes. (Tr. 256, 262, 460, 484).

The Court acknowledges that the record contains some abnormal findings that tend to support Plaintiff's claims. Plaintiff had an abnormal ejection fraction on one occasion (Tr. 222),

and chest X-rays showed cardiomegaly (Tr. 245, 346-47, 425, 453, 709). However, the ALJ reviewed and discussed the record as a whole and reasonably found that it supported the RFC finding. The Court cannot reweigh that evidence.

Plaintiff argues that the ALJ erred by placing too much reliance on the opinion of Dr. Alpern, who is a medical expert who never examined Plaintiff. The Court acknowledges that the opinion of a non-examining physician, standing alone, does not constitute substantial evidence. *See, e.g.*, *Harvey v. Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004). However, an ALJ may properly rely on such opinions as one part of the record where the record as a whole provides support for the ALJ's findings. *Id.*; *see also* 20 C.F.R. §§ 404.1527(c) 416.927(c).[1] As discussed above, the ALJ did not rely solely on Dr. Alpern's opinions, but instead relied on them in conjunction with the medical treatment records and the ALJ's assessment of Plaintiff's subjective complaints. Moreover, the ALJ gave good reasons for giving significant weight to Dr. Alpern's opinions. As the ALJ properly pointed out, Dr. Alpern's credentials supported his opinion. (Tr. 29). The record show that Dr. Alpern is a cardiologist with decades of experience, and Plaintiff's disability claim was based entirely on her heart condition. (Tr. 767-76). *See* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."); *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) ("We generally give greater weight to the opinion of a specialist about medical issues in the area of specialty."). The ALJ also discussed at length the ways in which Dr. Alpern's opinions were consistent with the medical

_____

[1] These regulations apply to claims filed before March 27, 2017. For claims filed after March 27, 2017, the rules governing the ALJ's evaluation of medical opinion evidence have been amended. Throughout this opinion, the Court will refer to the version of the regulations that applies to claims filed before March 27, 2017.

evidence. (Tr. 29). *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). In addition, the Court notes that Dr. Alpern cited to evidence in the medical records to support his opinions, including the implantation of Plaintiff's pacemaker; Plaintiff's reports of heart palpitations; and the results of objective testing including chest X-rays, echocardiograms, measurements of heart rhythm, and other findings. (Tr. 29, 780, 782, 785-86). The fact that Dr. Alpern cited evidence to support his opinion supports the ALJ's decision to give significant weight to that opinion. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

Plaintiff also argues that the ALJ erred by failing to weigh the opinion of his treating cardiologist, Dr. Harvey Serota. On June 11, 2012, Dr. Serota, submitted a letter listing Plaintiff's diagnoses and stating:

> I am writing to inform you that as of today, Ms. Adams is now to be considered 100% total and permanently disabled. Her health conditions are severe enough at this point to hinder her unable to have any form of gainful employment. She develops symptoms with very minimal exertion &/or stress.

(Tr. 212). The ALJ did not expressly discuss Dr. Serota's opinion. This may have been because Dr. Serota's opinion was dated prior to the relevant period under consideration, which began on July 20, 2012. The ALJ noted in his decision that "evidence pre-dating July 20, 2012 is irrelevant except in a historical context." (Tr. 25).

The relevant regulations require the Commissioner to evaluate every "medical opinion" he or she receives, with "medical opinion" defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the

claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions" 20 C.F.R. §§ 404.1527(a), (b); 416.927(a), (b). They also state that the Commissioner "will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [a claimant's] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Applying these regulations, courts have not hesitated to remand cases for further consideration where an ALJ failed to give good reasons for failing to give weight to the medical opinion of a treating physician. *See Anderson v. Barnhart*, 312 F. Supp. 2d 1187, 1194 (E.D. Mo. 2004) (finding that because a treating doctor had "offered a medical opinion" and the ALJ had not evaluated it, remand was required); *Clover v. Astrue*, No. 4:07CV574–DJS, 2008 WL 3890497, at *12 (E.D. Mo. Aug.19, 2008) (remanding where the ALJ failed to give reasons for discounting an RFC questionnaire completed by a treating physician).

However, the regulations also state that "[o]pinions on some issues . . . are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(e). These include "[o]pinions that you are disabled." *Id.* The Eighth Circuit has repeatedly held that a treating physician's opinion that a claimant is "disabled" or "unable to work" is not a "medical opinion" that is entitled to credit under the regulations, because it is an opinion on a question reserved to the Commissioner. *See Stormo v. Barnhart,* 377 F.3d 801, 806 (8th Cir. 2004) ("[T]reating physicians' opinions are not medical opinions that should be credited when they simply state that a claimant can not be gainfully employed, because they are merely 'opinions on the application of the statute, a task assigned

solely to the discretion of the [Commissioner].'") (quoting *Krogmeier v. Barnhart,* 294 F.3d 1019, 1023 (8th Cir.2002)). *Accord Brown v. Astrue*, 611 F.3d 941, 952 (8th Cir. 2010).

Dr. Serota's opinion does not specify any particular functional limitations that Plaintiff has as a result of her impairments, but rather states that Plaintiff "is now to be considered 100% total and permanently disabled" and that "[h]er health conditions are severe enough at this point to hinder her unable to have any form of gainful employment." (Tr. 212). These are merely opinions on whether Plaintiff is disabled, a matter that is reserved to the Commissioner, and thus they are not entitled to be treated as medical opinions under the regulations. Dr. Serota's statement that Plaintiff "develops symptoms with very minimal exertion &/or stress" might arguably be considered a medical opinion. However, it is so vague that it is unclear how the ALJ could have given credit to it, particularly because it does not specify what types of exertion or stress produce symptoms, nor does it state how severe the symptoms are when produced. Moreover, the ALJ's RFC restriction to low-stress work at the sedentary exertional level already accounts for the fact that Plaintiff cannot tolerate significant stress or exertion.

The Court further notes that Dr. Serota's opinion that Plaintiff was disabled was dated prior to the relevant disability period, and thus was of significantly less relevance. *See Baker v. Berryhill*, 720 F. App'x 352, 355 (9th Cir. 2017) (no reversible error in ALJ's failure to discuss opinion evidence dated prior to alleged onset date, because "medical opinions predating the alleged onset date 'are of limited relevance'") (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008)). This opinion was based entirely on evidence related to a period for which Plaintiff's disability application has already been denied, it and was made without consideration of any of the evidence regarding Plaintiff's diagnoses, symptoms, and limitations during the relevant period.

For all of the above reasons, the Court finds that there was no reversible error in the ALJ's failure to discuss Dr. Serota's letter and that the ALJ's RFC assessment was supported by substantial evidence in the record as a whole. Thus, Plaintiff's first argument is without merit.

### C. The ALJ's Assessment of Plaintiff's Subjective Complaints

Plaintiff's second argument is that the ALJ erred in his evaluation of Plaintiff's subjective complaints.[2] When evaluating a plaintiff's subjective complaints, the ALJ must consider several factors: "(1) the claimant's daily activities; (2) the duration, intensity, and frequency of [the symptoms]; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints." *Moore*, 572 F.3d at 524 (citing *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008), and *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). "An ALJ who rejects subjective complaints must make an express credibility determination explaining the reason for discrediting the complaints." *Moore*, 572 F.3d at 524 (quoting *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000)). However, the ALJ is not required to explicitly discuss each of these factors in relation to a claimant. *Id.* The Court "will defer to the ALJ's credibility finding if the ALJ 'explicitly discredits a claimant's testimony and gives a good reason for doing so.'" *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011) (quoting *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010)).

---

[2] The Commissioner has issued a new ruling, applicable to decisions made on or after March 28, 2016, that eliminates the use of the term "credibility" when evaluating subjective symptoms. Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). This clarifies that "subjective symptom evaluation is not an examination of an individual's character." However, the factors to be considered remain the same under the new ruling. *See id.* at *13 ("Our regulations on evaluating symptoms are unchanged."). *See also* 20 C.F.R. §§ 404.1529, 416.929.

The Court finds that the ALJ conducted a proper analysis of Plaintiff's subjective complaints, supported by good reasons and substantial evidence. The ALJ expressly found Plaintiff's complaints only partially credible after consideration of several of the relevant factors. (Tr. 29-30). First, as discussed above, the ALJ considered objective medical evidence showing generally normal or mild examination findings. (Tr. 29). *See Goff v. Barnhart*, 421 F.3d 785, 792-93 (8th Cir. 2005) (holding that it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in assessing subjective complaints). Second, with regard to Plaintiff's daily activities, the ALJ reasonably found that Plaintiff's assertion that she could not perform any household chores was at odds with her ability to care for children aged 5, 11, and 13. (Tr. 29, 47-48, 173). *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) (finding "[t]he inconsistency between [the claimant's] subjective complaints and evidence regarding her activities of daily living" raised questions about the weight to give to her subjective complaints). Third, the ALJ also discussed the intensity and frequency of Plaintiff's symptoms and reasonably considered her testimony that her symptoms occurred only when she had an "attack," which occurred about three or four times a week, and that she was otherwise okay (Tr. 29, 46), and her reports to her doctors that her episodes of arrhythmias lasted less than five minutes. (Tr. 29, 256, 262, 269, 460, 484). He also reasonably considered that although Plaintiff had some difficulty being on her feet and walking, she acknowledged that she did not have such severe limitations that she needed to use a cane or walker. (Tr. 29, 45, 49). Fourth, with regard to Plaintiff's work history, the ALJ reasonably considered that Plaintiff's earnings record prior to her alleged onset date was minimal, given that during the ten-year period from 2002 to 2011, she had no income in three years and less than $8,000 in annual income in four years. (Tr. 29-30, 155-56, 158). A sporadic work history is a proper consideration in evaluating subjective complaints of disabling limitations. *See Julin v.*

*Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016) ("The ALJ reasonably concluded that [the claimant's] 'sporadic work history raises some questions as to whether the current unemployment is truly the result of medical problems.'"). *See also Bernard v. Colvin*, 774 F.3d 482, 489 (8th Cir. 2014)).

In sum, the Court finds that the ALJ conducted an express evaluation of Plaintiff's subjective complaints, considered several of the relevant factors, and gave good reasons for finding Plaintiff's subjective complaints not entirely credible. The Court will therefore defer to that analysis. *See Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012) ("If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [the court] will normally defer to the ALJ's credibility determination.") (quoting *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008)).

### D. Evidence Submitted to the Appeals Council: The Opinion of Registered Nurse David Palmer

Plaintiff's final argument is that remand is required so that the ALJ can evaluate the opinion of a registered nurse, David Palmer, who submitted opinion evidence to the Appeals Council after the ALJ's decision. On February 17, 2016 (about five months after the date of the ALJ's decision), Mr. Palmer completed a Cardiac RFC Questionnaire for Plaintiff. (Tr. 12-16). Mr. Palmer stated that he had seen Plaintiff every three to six months since 2009. (Tr. 12). Mr. Palmer stated that Plaintiff's diagnoses were chest pain, shortness of breath, and MR,[3] and that her New York Heart Association functional classification was Class III. Plaintiff's prognosis was "Lifelong Limited Mobility d/t SOB/Palpitations." (Tr. 12). When asked to state the clinical findings, laboratory, and test results that showed Plaintiff's medical impairments, Mr. Palmer noted that she had an ejection

---

[3] The Court's review of the record suggests that "MR" may refer to "mitral regurgitation."

fraction of 60% on October 9, 2015.[4] (Tr. 12). Mr. Palmer stated that Plaintiff had chest pain, anginal equivalent pain, shortness of breath, fatigue, weakness, palpitations, and dizziness; that Plaintiff has a marked limitation of physical activity; that stress exacerbates Plaintiff's chest pain; that Plaintiff would be capable of low stress jobs; and that Plaintiff's cardiac symptoms would frequently be severe enough to interfere with attention and concentration needed to perform even simple work tasks. (Tr. 12-13). Mr. Palmer found that Plaintiff could stand or walk less than two hours a day; could sit at least six hours a day; and did not need to shift positions at will. (Tr. 14). However, he also found that she would need to take breaks to sit quietly for 30 minutes every one to two hours. (Tr. 14). He also stated that if she had a sedentary job, her legs would need to be elevated on a chair 80% of the time. (Tr. 14). Mr. Palmer found that Plaintiff could frequently lift less than ten pounds and occasionally up to twenty pounds, and could only rarely crouch or squat, climb ladders, or climb stairs. (Tr. 15). He also found that she would need to avoid exposure to several environmental factors, including cigarette smoke and temperature extremes. (Tr. 15). He also opined that Plaintiff would be absent from work, on average, two or three days a month. (Tr. 16). The Appeals Council denied Plaintiff's request for review, finding that the evidence from Mr. Palmer was dated in 2016 and thus did not affect the decision about whether Plaintiff was disabled on or before September 22, 2015. (Tr. 8).

Where, as here, "the Appeals Council denies review of an ALJ's decision after reviewing new evidence, "[the Court does] not evaluate the Appeals Council's decision to deny review, but rather [it] determine[s] whether the record as a whole, including the new evidence, supports the ALJ's determination." *McDade v. Astrue*, 720 F.3d 994, 1000 (8th Cir. 2013) (quoting

---

[4] As written, this date would indicate that this finding was made after the ALJ's decision. However, it appears likely that Mr. Palmer was actually referring to an October 9, 2013 echocardiogram showing a 60% ejection fraction. (Tr. 481-82).

*Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000)). *Accord Perks v. Astrue*, 687 F.3d 1086, 1093 (8th Cir. 2012). The Eighth Circuit has noted that this means that the Court "must speculate to some extent on how the administrative law judge would have weighed the newly submitted reports if they had been available for the original hearing," which is "a peculiar task for a reviewing court." *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994). *Accord Van Vickle v. Astrue*, 539 F.3d 825, 828 n.2 (8th Cir. 2008).

After review of the record, the Court finds that even when Mr. Palmer's opinion is considered, the ALJ's decision is supported by substantial evidence in the record as a whole. The Court first notes that as a nurse, Mr. Palmer is not an "acceptable medical source" and, thus, is not considered a "treating source" whose opinion is entitled to controlling weight. 20 C.F.R. §§ 404.1513(a) & (d)(1), 416.913(a) & (d)(1); SSR 06–03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) ("[O]nly 'acceptable medical sources' can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight."). However, he is an "other source[ ]" whose opinions "may provide insight into the severity of [the individual's] impairment(s) and how it affects the individual's ability to function." SSR 06–03p, 2006 WL 2329939, at *2. *See also* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) (discussing nurse practitioners as "other sources"); *Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003) (same). The ALJ has more discretion when evaluating an opinion from an "other" medical source than when evaluating an opinion from an acceptable medical source. *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005). In weighing opinions from other medical sources, the factors to be considered may include the length and frequency of the relationship, how consistent the opinion is with other evidence, the degree to which the source presents relevant evidence to support an opinion, how

well the source explains the opinion, whether the source has a specialty or area of expertise related to the impairment(s), and other factors. SSR 06–03p, 2006 WL 2329939, at *4-*5.

After consideration of these factors in light of the record and the ALJ's decision, Court finds that the ALJ would likely have given very little weight to the opinions of Mr. Palmer, for several reasons. First, Mr. Palmer's opinion was dated nearly five months after the ALJ's September 22, 2015 decision that Plaintiff had not been under a disability prior to that date. When asked on the questionnaire for the earliest date that the descriptions of limitations in the questionnaire applied, Mr. Palmer responded, "Immediate," rather than specifying some date in the past that might have been during the relevant time frame. (Tr. 16). Thus, it is unclear whether Mr. Palmer was even addressing the issue of Plaintiff's capabilities during the time period under consideration by the ALJ.

Second, although Mr. Palmer states that he saw Plaintiff every three to six months, neither Mr. Palmer nor Plaintiff has identified any records showing Mr. Palmer's treatment of Plaintiff, nor has the Court found any in its review of the record. There is also nothing in Mr. Palmer's opinion to indicate whether Mr. Palmer reviewed Plaintiff's medical records in rendering his opinion. The absence of evidence regarding what kind of treatment relationship (if any) Mr. Palmer had with Plaintiff, or even what kind of records Mr. Palmer reviewed, make it less likely that the ALJ would have accorded significant weight to his opinions.

Third, Mr. Palmer does not cite any medical evidence that supports his opinions regarding Plaintiff's impairments. When asked to state the clinical findings, laboratory, and test results that show Plaintiff's impairments, Mr. Palmer stated only that Plaintiff had an ejection fraction of 60% on a single date. However, that appears to be a normal result. In treatment notes, Dr. Toniya Singh, M.D. characterized Plaintiff's 60% ejection fraction as a "normal left ventricular ejection fraction,"

and she discussed this result as part of her assessment that Plaintiff's chest pain "appears to be noncardiac." (Tr. 434).[5] Thus, it appears that the only finding cited by Mr. Palmer actually undermines, rather than supports, his opinion that Plaintiff has cardiac problems that significantly limit her ability to function. Plaintiff has not provided any explanation for why an ejection fraction of 60% provides any support for any of Mr. Palmer's opinions.

Fourth, Mr. Palmer's opinions indicating that Plaintiff's cardiac problems would cause such significant and ongoing limitations that she would be unable to perform even a reduced range of sedentary work are not consistent with the medical treatment records. As discussed at length above, the record contains generally normal examination findings and only intermittent complaints of symptoms, and those treatment notes are more consistent with the opinions of Dr. Alpern than with those of Mr. Palmer.

Fifth, the record contains no information regarding Mr. Palmer's specialty or qualifications other than that he is a registered nurse. The ALJ credited the opinion of Dr. Alpern in part because of his credentials as an experienced cardiologist. Particularly in light of the absence of medical support Mr. Palmer offers for his opinions, it is unlikely that the ALJ would have credited them over the opinions of the cardiologist who reviewed Plaintiff's medical records.

Finally, the Court notes that several of Mr. Palmer's opinions are actually consistent with the RFC, including the opinion that Plaintiff could sit for at least six hours and stand and/or walk for less than two hours; the opinion that Plaintiff was capable of performing low-stress jobs; and the opinion that Plaintiff could lift and carry less than ten pounds frequently and 20 pounds

---

[5] Similarly, Defendant points the Court to an online resource stating that 60% is a normal ejection fraction. *See* Def's Br., Doc. 35, at 9 (citing Mayo Clinic, *Ejection fraction: What does it measure?*, https://www.mayoclinic.org/ejection-fraction/expert-answers/faq-20058286 (last visited Nov. 6, 2017) ("An LV [left ventricle] ejection fraction of 55 percent or higher is considered normal.").

occasionally. Thus, even assuming that the ALJ gave some weight to Mr. Palmer's opinion, it is not necessarily the case that the RFC assessment would have been different.

For all of the above reasons, the Court finds that the ALJ's decision is supported by substantial evidence, even when the opinion of Mr. Palmer is considered. The Court does not find that the ALJ would have reached a different conclusion had the ALJ had Mr. Palmer's opinion. The Court concludes that remand is not required. *See Perks*, 687 F.3d at 1093-94 (holding that a treating physician opinion submitted after the ALJ's decision did not require remand where the opinion did "not indicate that it [was] supported by clinical or diagnostic data" and where consideration of the opinion along with the evidence before the ALJ did "not lead to the conclusion that the ALJ would have reached a different result or that the ALJ's decision is unsupported by substantial evidence in the record as a whole").

## VI. CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner is **AFFIRMED**.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 17th day of September, 2018.